## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFERY J. MARKSMEIER, | ) | CASE NO. 8:09CV30 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| RANDY DALE DAVIE, individually | ) | |
| and in his official capacity as police | ) | |
| officer of the City of Wisner, | ) | |
| Nebraska; MARK DELMONT, | ) | |
| individually and in his official | ) | |
| capacity as Cuming County | ) | |
| Nebraska deputy sheriff; and LONNIE | ) | |
| SCHULTZ, individually and in his | ) | |
| official capacity as police chief of the | ) | |
| village of Beemer, Nebraska, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendant Mark Delmont's Motion for Summary Judgment (Filing No. 11), the Defendant Randy D. Davie's Motion for Summary Judgment (Filing No. 20), and the Defendant Lonnie Schultz's Motion for Summary Judgment (Filing No. 30). For the reasons stated below, the Court finds that the Defendants are entitled to summary judgment, and the Court will grant the Defendants' Motions.

## PROCEDURAL BACKGROUND AND FACTS

The Plaintiff, Jeffery J. Marksmeier, brought this action against Defendants Randy Dale Davie ("Officer Davie"), Mark Delmont ("Deputy Delmont"), and Lonnie Schultz ("Chief Schultz") individually and in their official capacities as law enforcement officers in the state of Nebraska. (Compl., Filing No. 1, ¶ 1.) Marksmeier resided in Beemer, Nebraska, at all relevant times material to the instant case. (Compl., ¶ 3.) Born on October 1, 1983, he is

now twenty-five years old. (Index of Evidence In Opposition to Motion for Summary Judgment by Defendant Mark Delmont, Filing No. 37, Affidavit of Jeffery J. Marksmeier ("Marksmeier Aff."), p. 3.)  Marksmeier is mildly mentally retarded. (Compl., ¶ 8.)  His intellectual functioning is at the "Extremely Low" range of the Wechsler Adult Intelligence Scale-III. (Affidavit of Dr. Margaret D. Westby, Ph.D ("Westby Aff."), Filing No. 37, p. 16, ¶ 10.)

At all relevant times, the Defendants were law enforcement officers within the state of Nebraska acting under color of law. (Compl., ¶¶ 4-6.)  Officer Davie was an officer with the police department of the City of Wisner, Nebraska. (Compl., ¶ 4; Affidavit of Randy D. Davie, May 28, 2009 ("Davie Aff."), Filing No. 21-2, ¶ 1.)  Deputy Delmont was employed by the sheriff's department of Cuming County, Nebraska. (Compl., ¶ 5; Affidavit of Mark Delmont, April 14, 2008 ("Delmont Aff."), Filing No. 12-2, ¶ 1.)  Chief Schultz was the Chief of the Police Department of the Village of Beemer, Nebraska. (Compl., ¶ 6; Affidavit of Lonnie Schultz, June 23, 2009 ("Schultz Aff."), Filing No. 31, ¶ 2.)

In his Complaint, Marksmeier stated separate claims against all the Defendants in their individual and official capacities under 42 U.S.C. § 1983, alleging that they violated his Fourth and Fourteenth Amendment constitutional rights by falsifying his admission to having sexual intercourse with JP, a minor female, and using such false statements as grounds to detain him. (Compl., ¶¶ 22-36).  He also presented claims for false arrest and false imprisonment, intentional infliction of emotional distress, and libel, slander, and defamation. (Compl., ¶¶ 37-45.)

In support of these claims, Marksmeier described a sequence of events. He stated that in the late evening of January 22, 2007, or the early morning of January 23, 2007, he

2

was taken into custody at the Beemer, Nebraska, police station in connection with claims that he had struck SP, a female minor and JP's sister. (Compl., ¶¶ 7, 9.) Marksmeier stated that certain of the Defendants questioned him aggressively and inappropriately regarding his involvement with SP, and "goaded [him] into telling the Defendants about purported sexual experiences." (Compl., ¶¶ 10, 11, 12.)

Markmeier stated that the interrogation lasted over three hours. (Compl., ¶ 8.) At its conclusion, Marksmeier was arrested. (Compl., ¶ 14.) On January 25, 2007, following Marksmeier's arrest, Officer Davie filed an affidavit of probable cause for the arrest and continued detention of Marksmeier. (Compl., ¶ 15.) Marksmeier claimed that this affidavit contained false statements, for it alleged that during the interrogation Marksmeier admitted to having sexual intercourse with JP (Compl., ¶ 15), but that at no point in the recording of the interrogation was such an admission evident (Compl., ¶ 18). Marksmeier stated that he was consequently incarcerated until January 31, 2007, when he was released after posting bond (Compl., ¶ 16), and that during the time of his incarceration, JP denied having sexual intercourse with him (Compl., ¶ 18).

On February 6, 2007, a criminal complaint was filed against Marksmeier, charging First Degree Sexual Assault and Child Abuse. (Compl., ¶¶ 16, 17.) This criminal complaint was subsequently dismissed (Compl., ¶ 20), and Marksmeier brought the instant civil-rights and tort claims.

Deputy Delmont, Officer Davie, and Chief Schultz filed Motions for Summary Judgment (Filing Nos. 11, 20, 30). They stated that in the early morning of January 24, 2007, Marksmeier, upon the request of Officer Davie, was brought to the Beemer Police Station by Chief Schultz to be questioned regarding reports that Officer Davie and Deputy

3

Delmont obtained on January 23, 2007, alleging that Marksmeier had struck SP. (Schultz Aff., ¶¶ 7, 8, 11, 12; Davie Aff., ¶¶ 8, 9; Delmont Aff., ¶¶ 9,10; Second Affidavit of Mark Delmont, July 11, 2009 ("Delmont Aff. 2"), Filing No. 44-2, Ex. B (Filing 44-4).)  When Chief Schultz and Marksmeier arrived at the station at approximately 2:10 a.m. to 2:20 a.m., Officer Davie was there waiting. (Schultz, ¶ 11, 12.)  Officer Davie began the interview shortly thereafter, and continued questioning Marksmeier until approximately 3:15 a.m., when Officer Davie exited the room and requested help from Deputy Delmont or Chief Schultz. (Davie Aff., ¶ 10; Delmont Aff., ¶ 13; Schultz Aff., ¶¶ 14, 15.)  After a short discussion with Officer Davie, Deputy Delmont entered the interview room and began to question Marksmeier.  (Davie Aff., ¶ 10; Delmont Aff., ¶ 15.)

The Defendants state that during the course of questioning, Marksmeier did, in fact, admit to having sexual intercourse with JP.  (Delmont Aff., ¶ 24, 25; Davie Aff., ¶ 13.) Deputy Delmont stated that although this admission was not on the audio recording of the interrogation, it was contained in the handwritten notes (Filing No. 12-3) he contemporaneously took as questioning progressed during the interrogation (Delmont Aff., ¶¶ 16-19) – notes Officer Davie observed Marksmeier sign as the interview progressed (Davie Aff. 2, ¶ 3).   Deputy Delmont stated that taking notes in this way was his standard procedure, as he had been trained not to rely solely on electronic recordings.  (Delmont Aff., ¶ 17, 18.)  Deputy Delmont explained the absence of Marksmeier's admission in the audio recording by alleging that, during the course of the interrogation, the audiotape ran out of space (Delmont Aff., ¶ 21; Davie, ¶ 12); that he did not notice this (Delmont Aff., ¶20); and that a new tape was not started until Officer Davie reentered the interview room

4

approximately 28 minutes after Deputy Delmont had initiated his line of questioning (Delmont Aff., ¶21; Davie Aff., ¶ 12).

Deputy Delmont stated that he and Officer Davie, through their previous contacts with Marksmeier, had observed that Marksmeier appeared "able to tell the difference between right and wrong, and the difference between the truth and a lie . . . ." (Def.'s Br. in Support of Summ. J., Filing No. 13, p. 3, ¶ 6.)  Delmont asserted that Marksmeier appeared able to answer questions "in a lucid and coherent manner" and appeared "to be very familiar with the justice system and how it worked."  (Def.'s Br. in Support of Summ. J., Filing No. 13, p. 3, ¶ 6.)

Marksmeier filed a Brief in Opposition to Deputy Delmont's Motion for Summary Judgment (Filing No. 38 ("Pl.'s Br.")), a Brief in Opposition to Officer Davie's Motion for Summary Judgment (Filing No. 42 ("Pl.'s Br. 2")), and a Brief in Opposition to Chief Schultz's Motion for Summary Judgment (Filing No. 46, ("Pl.'s Br. 3")), reasserting that he "did not tell any of the Defendants that he had sex with [JP]."  (Pl.'s Br., p. 10, ¶ 62; Marksmeier Aff., ¶ 29.)  Marksmeier also stated that Deputy Delmont wrote notes and asked for his signature after the interrogation had ended (Marksmeier Aff., ¶ 42), and although he conceded to Deputy Delmont's and Officer Davie's assertions that he could understand the justice system and function in an interrogation (Pl.'s Br., p. 2), Marksmeier alleged that the two law enforcement officers knew that he had trouble with people taking advantage of him because of his mental condition (Marksmeier Aff., ¶ 49.)

Deputy Delmont filed a Reply Brief (Filing No. 43) and an Index of Evidence (Filing No. 44), Officer Davie filed a Reply Brief (Filing No. 47) and Index of Evidence (Filing No.

5

48), and Chief Schultz filed a Reply Brief (Filing No. 53) in support of their respective motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "a genuine issue of material fact such that [his] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact," one that is outcome determinative–"a dispute that might

6

'affect the outcome of the suit under the governing law . . . .'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)).  Thus, a "genuine issue" is more than "some metaphysical doubt as to the material facts,"  *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bloom*, 440 F.3d at 1029-30 (emphasis and quotation marks removed) (quoting *Anderson*, 477 U.S. 247-48).

In other words, "[o]n a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, __ U.S. __, 129 S.Ct. 2658, 2677 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott,* 550 U.S. 372 (holding when record, viewed in its entirety, clearly contradicts one non-moving party's account of disputed events or facts, court need not weigh facts in party's favor at summary judgment).

## DISCUSSION

_____In their Motions for Summary Judgment, the Defendants assert that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.  Specifically, in their briefs in support of their motions for summary judgment (Filing

No. 13, 22, 32), Defendants argue, first, that they are entitled to qualified immunity in their individual capacities; second, that there was no policy or custom that would support a suit against Cuming County, Nebraska, the City of Wisner, Nebraska, or the Village of Beemer, Nebraska, for actions against the Defendants in their official capacities; and third, that Marksmeier's tort claims fail to state claims on which relief can be granted, or are barred by sovereign immunity.  For the following reasons, the Court will grant the Defendants' Motions for Summary Judgment.[1]

### 1.      Whether Defendants Are Entitled to Qualified Immunity.

The Defendants contend that they are entitled to qualified immunity from suit with respect to Marksmeier's claims against them in their individual capacities under 42 U.S.C. § 1983.  Marksmeier argues that the Defendants are not entitled to qualified immunity, because they violated his clearly established right to be free from unreasonable searches and seizures by falsifying his admission to having sexual intercourse with JP and by using the false admission as probable cause to detain him.  The Court concludes that there is no genuine issue of material fact – no outcome-determinative dispute – with respect to these constitutional claims.  Specifically, the Court finds that there is no genuine issue of material fact regarding whether a constitutional violation occurred *at all*, and therefore, the issue of qualified immunity is not reached, and the Defendants are entitled to summary judgment on the § 1983 claims against them in their individual capacities.

---

[1] By addressing the Defendants' Motions collectively, the Court recognizes that, in some instances, the breadth of analysis may be greater than required with respect to certain issues and certain defendants – for example, § 1983 claims against Chief Schultz in his individual capacity, for he was largely uninvolved in the interrogation – but it concludes such breadth does not change the analysis or disposition of any of the motions.

Section 1983 imposes liability on every person who subjects another to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Here, there is no genuine issue of material fact as to whether Marksmeier demonstrated "a showing that a right secured by the Constitution or federal law was violated," which is a "vital element" of any claim under § 1983. *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) (citing *Rubek v. Barnhart*, 814 F.2d 1283, 1285 (8th Cir. 1987)).

At the summary judgment stage, the facts in a § 1983 claim "must be viewed through the prism of Rule 56 – that is, [the Court] must take as true those facts asserted by plaintiff that are properly supported in the record." *Sheets*, 189 F.3d at 777 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). Stated differently, in *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court held that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." 550 U.S. at 380. Like this case, *Scott* involved summary judgment in a § 1983 civil rights action. Specifically, in *Scott* the plaintiff brought suit claiming violation of his Fourth Amendment rights following a police officer's allegedly excessive use of force in terminating a high-speed car chase by forcing plaintiff's car to spin out of control. The plaintiff alleged that the officer's maneuver, that caused the plaintiff's car to crash and caused severe injuries to the plaintiff, was "excessive" because he was not posing an immediate danger to the public, for, during the chase, he posed no threat to pedestrians or other motorists, of which there were few, and he remained in control of his vehicle, slowing for turns and intersections. This account differed greatly

9

from that of the officers involved in the chase, who collectively asserted that the plaintiff had posed a serious danger to the public. The court of appeals took such differing descriptions as a genuine issue of fact, and denied summary judgment. The Supreme Court reversed. It looked to the videotape-recording of the chase and concluded that the tape told "quite a different story"–one that overwhelmingly supported the officers' account and "quite clearly contradict[ed] the version of the story told by" the plaintiff. *Id.* at 378-79. The Court held that, when two parties are simply offering different accounts of the same events, the existence of clear evidence in the record, like the video-recording of the chase, abolishes what might otherwise be a genuine issue of fact, explaining "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

In the present case, as in *Scott v. Harris*, the record as a whole – specifically the taped interview – contradicts Marksmeier's assertions that he never admitted to having sexual intercourse with JP, and thus, that Deputy Delmont's notation stating such, and the affidavit incorporating such, were deliberate falsehoods.

Very simply, Marksmeier contends that he never stated he had sex with JP, and that the audiotape of the interrogation does not, at any time, evince such an admission (Compl., ¶ 18; Marksmeier Aff., ¶¶ 10, 29). The record, as a whole, however, contradicts his position. Six minutes and fifty-two seconds into the second MP3 file of the audiotape of the interview (Filing No. 44-12, Ex. A), the following exchange takes place:

Q: "So you and [SP] never got it on, ever?"

A: "Nope."

10

Q: "You never did the naked noodle dance with her?"

A: "Huh-uh"

Q: "Just [JP].  Just [JP], right?"

A: "Right."

(Filing No. 44-12, Ex. A.) This exchange demonstrates that Marksmeier in fact did make a statement indicating that he engaged in sexual contact with JP.  The record, as in *Scott*, "quite clearly contradicts the version of the story" told by Marksmeier and disputed by the Defendants.

Further, comparing Deputy Delmont's handwritten notes (Delmont Aff., Ex. A, Filing No. 12-3) with the audiotape of the interview (Filing No. 44-12, Ex. A), Marksmeier's admission to having sexual contact with JP fits contextually and chronologically – that is, the notes before and after the alleged admission correspond to the audio before and the audio after the unrecorded period.  (Filing No. 12-5; Filing No. 44-12, Ex. A).  Marksmeier's account of the interview – specifically his claim that Deputy Delmont only wrote notes after the interview process had concluded and thus, Marksmeier only signed such notes after the interview process was completed (Marksmeier Aff., ¶ 42) – is undermined by the clear recording on the audiotape, demonstrating that Deputy Delmont explicitly read the handwritten notes, often verbatim, to Marksmeier and specifically asked him to sign next to each note (Filing No. 44-2, Ex. A).  Consequently, when viewed in its entirety, the record undermines the veracity of Marksmeier's statements describing the interview, and it is clear that no genuine issue of material fact exists as to whether Marksmeier admitted to having sexual contact with JP.  Thus, there is no genuine issue of material fact as to whether the Defendants violated Marksmeier's Fourth Amendment constitutional rights.

11

Marksmeier also argues that his arrest and detention were unconstitutional because his probable cause hearing was not "prompt" in a constitutional sense. (Pl.'s Br., p. 17.) *See generally Gerstein v. Pugh*, 420 U.S. 103, 126 (1975) (holding "that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention."); *County of Riverside v. McLaughlin*, 500 U.S. 44, 54-56 (1991) (holding Fourth Amendment commands "prompt" determinations of probable cause, and 48 hours will meet such requirement). Marksmeier contends that the affidavit of probable cause states that his arrest took place on January 23, 2007, but that Deputy Delmont's and Officer Davie's affidavits allege that it was effected on January 24, 2007. (Pl.'s Br., p. 16-17.) Marksmeier argues that this discrepancy is important because the hearing on the probable cause affidavit was on January 25, 2007, and, as a consequence, his detention allegedly violates Neb. Rev. Stat. § 29-410, which states that a law enforcement officer "having in lawful custody any person accused of an offense for the purpose of bringing him before the proper magistrate or court, may place and detain such prisoner in any county jail of this state for one night or longer, as the occasion may require, so as to answer the purposes of the arrest and custody." Although it is unlikely that the discrepancy alleged by Marksmeier would bring into question the constitutionality of his detention, again the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for" Marksmeier on this issue. *Matsushita*, 475 U.S. at 587.

Deputy Delmont, Officer Davie, and Chief Schultz all agree that Marksmeier's probable cause hearing was on January 25, 2007, but they all assert that Marksmeier's interrogation and arrest occurred on January 24, 2007. (Delmont Aff., ¶¶ 9, 27, 30; Davie Aff., ¶¶ 8, 9, 15, 17; Schultz Aff., ¶¶ 6, 7, 8.) They allege that the date stated in the

12

affidavit of probable cause–January 23, 2007–is a typographical error due to the fact that Marksmeier was arrested in the early morning of January 24, 2007, and Officer Davie misstated the date of arrest based upon when he began his work shift–January 23, 2007– rather than the early morning of the next day–January 24, 2007–when Marksmeier was actually placed under arrest.  (Third Affidavit of Randy D. Davie, July 20, 2009 ("Davie Aff. 3"), Filing No. 48-2, ¶ 1; Delmont Aff. 2, ¶ 13.)  This account is not only supported by the officers' statements, but the January 24 arrest date is also reflected in the Waiver of *Miranda* rights Marksmeier signed before the interrogation began (Second Affidavit of Randy D. Davie, July 14, 2009 ("Davie Aff. 2"), Filing No. 50-2, Ex. A), as well as Deputy Delmont's Incident Narrative (Delmont Aff. 2, Ex. B) and his notes from the interrogation (Delmont Aff., Ex. A).  Again, the Court need not reach the issue of qualified immunity, for, without supplanting the role of the fact-finder, the Court finds that no rational trier of fact, viewing the record in its entirety and in the light most favorable to Marksmeier, could find any constitutional violation occurred that could serve as the basis for a § 1983 claim against the Defendants in their individual capacities.

Finally, Marksmeier alleges that Office Davie was outside his jurisdiction when Officer Davie arrested Marksmeier, and therefore the arrest was unconstitutional.  (Pl.'s Br. 2, p. 4-5.)  Marksmeier further argues that, as a consequence of this unconstitutionality, Deputy Delmont's and Chief Schultz's participation in the arrest, or the process leading up to the arrest, amounted to a constitutional violation.  (Pl.'s Br., p. 14-15; Pl.'s Br. 3, p. 6-7.)

Marksmeier cites Neb. Rev. St. § 29-215 for the proposition that a law enforcement officer in Nebraska only has the power to enforce the laws of the state, or the political subdivisions thereof, in that officer's primary jurisdiction, unless certain exigent

13

circumstances present themselves, like hot pursuit or the possibility that the suspect will destroy evidence. (Pl.'s Br. 2, p. 4.)  Marksmeier asserts that Officer Davie was not in his primary jurisdiction, and therefore, absent hot pursuit or like exigent circumstances, his arrest of Marksmeier was unlawful.  (Pl.'s Br. 2, p. 4-5.)

Under the statute, "[p]rimary jurisdiction means the geographic area within the territorial limits of the state or political subdivision that employs the law enforcement officer." § 29-215(4)(b).  Officer Davie was employed full-time with the City of Wisner and also part-time as a police officer with the Village of Beemer.  (Davie Aff. 2, ¶ 1.)  That is, the Village of Beemer *employed* Officer Davie, and he consequently could effect an arrest anywhere within its territorial limits.  Marksmeier does not offer any evidence to show that Officer Davie was not employed by the Village of Beemer.  Instead, in response to this showing by Officer Davie, Marksmeier only reiterated that Officer Davie was an officer of the City of Wisner.  (Pl.'s Br. 2, p. 4-5; Pl.'s Br. 3, p. 6-7.)  Thus, there is no genuine issue of fact regarding whether the Village of Beemer employed Officer Davie and, therefore, Officer Davie and the other Defendants are entitled to summary judgment regarding any § 1983 claims based on such an issue.

Further, "the Supreme Court recently held that a police officer who makes an arrest that is based on probable cause but who is prohibited by state law from doing so does not violate the Fourth Amendment."  *Rose v. City of Mulberry, Ark.*, 533 F.3d 678, 680 (8th Cir. 2008) (citing *Virginia v. Moore*, __ U.S. __, 128 S.Ct. 1598, 1607 (2008)).  Although state law can create an enhanced protection under certain circumstances, "that enhanced protection does not govern the scope of the protections afforded by the Fourth Amendment" because "[i]f state laws could define the contours of the Fourth Amendment,

14

its protections would vary from place to place and from time to time." *Id.* (citations and quotation marks omitted); *see also Virginia v. Moore*, 128 S.Ct. at 1604 (holding "state law [does] not alter the content of the Fourth Amendment."). Without rising to the level of a constitutional violation, therefore, Marksmeier's alleged violation of Neb. Rev. Stat. § 29-215 remains an alleged statutory violation, and it is one that Marksmeier failed to advance. Therefore, the Court finds that there is no genuine issue of material fact as to whether the Defendants violated § 29-215 or whether any such violation amounted to a constitutional violation for the purposes of a § 1983 claim against the Defendants in their individual capacities.

Overall, the record demonstrates no genuine issue of material fact that a deprivation of a right secured by the constitution or other federal laws occurred. In response to the Defendants' motions for summary judgment, Marksmeier failed to produce specific facts demonstrating "a genuine issue of material fact such that [his] claim should proceed to trial." *Nitro Distrib*, 565 F.3d at 422 (internal quotation marks omitted) (quoting *Matsushita*, 475 U.S. at 586-87 (1986)). The Court finds, without reaching the specific issue of qualified immunity, that the Defendants are entitled to summary judgment on all § 1983 claims against them in their individual capacities, and their motions will be granted in this respect.[2]

---

[2] In their respective briefs, the parties address constitutional protections under the Fourteenth Amendment, often invoking the Fourteenth Amendment's threshold standard of whether the Defendants' conduct was "conscience-shocking." Such a claim is not advanced in the Complaint nor in any proposed amended pleadings. *See generally* Fed. R. Civ. P. 15 (addressing amended and supplemental pleadings); NECivR 15.1(providing process to amend pleading). Accordingly, the Court declines to address a claim that has not been presented.

15

2.    Whether Defendants Are Entitled to Summary Judgment on All Claims Against Them in Their Official Capacities.

The Defendants argue that summary judgment is warranted on all Marksmeier's claims against them in their official capacities because such claims implicate Cuming County's liability for the actions of Deputy Delmont, the City of Wisner's liability for the actions of Officer Davie, and the Village of Beemer's liability for the actions of Chief Schultz, and there is no basis – no official policy or custom – to support such liability.

Whereas "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law[,] . . . [o]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citations and internal quotation marks omitted).  In other words, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" to which the officer is an agent. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). This distinction focuses the Court's attention on the actions or conduct of the entity.  Specifically, in such an official-capacity suit, a municipality or other entity may not be held liable under § 1983 unless "the entity itself is a 'moving force' behind the violation.  That is, the entity's official 'policy or custom' must have 'caused' the constitutional violation; there must be an 'affirmative link' or a 'causal connection' between the policy and the particular constitutional violation alleged.'" *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987); *see also Seymour v. City of Des Moines*, 519 F.3d 790 (8th Cir. 2008).

In the present case, Marksmeier does not allege that the governmental entities maintained a facially unconstitutional policy that affirmatively caused the alleged violations

16

of his constitutional rights.  Instead, he alleges that the entities' policies "allow[ed]" and "condone[d]" (Pl.'s Br., p. 24), or effectively  "turned a blind eye to" (Pl.'s Br. 2, p. 8), the Defendants' allegedly unconstitutional conduct.

In a case "[w]here a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers." *Szabla*, 486 F.3d at 390.  Specifically, the plaintiff must point to a policy choice made among alternatives that is characterized by a "'deliberate indifference' to constitutional rights" or the choice's "known or obvious consequences." *Id.* (citations omitted).  Only then, can an entity's alleged "failure to adopt adequate safeguards" be the basis for official-capacity liability under § 1983. *Id.*

Marksmeier does not claim, or even attempt to demonstrate, that Cuming County, the City of Wisner, or the Village of Beemer exhibited deliberate indifference to his constitutional rights.  Although he seeks to establish some presumptive connection between Deputy Delmont's alleged actions and an implicit Cuming County policy of "leeway" (Pl.'s Br., p. 25), or between Officer Davie's participation in the interrogation and the City of Wisner's supposed complicity in such alleged unlawful behavior (Pl.'s Br. 2, p. 8), merely providing government agents discretion in their actions does "not give rise to liability under § 1983," even where more oversight or guidance may have helped prevent their violation of a constitutional right, *Szabla*, 486 F.3d at 390-91.  With respect to Chief Schultz, Marksmeier only states that if the Village of Beemer had an official policy of allowing unlawful interrogations and arrests, then it should be liable for such violations, but

he does not allege any facts to demonstrate that the Village of Beemer, or its police department, actually had such a policy.  (Pl.'s Br. 3, p. 6.)

Because there is no genuine issue of material fact regarding whether a constitutional violation occurred *at all* in this case, and because there is no genuine issue of material fact regarding whether Cuming County, the City of Wisner, or the Village of Beemer was the "moving force" for any alleged violations of Marksmeier's constitutional rights, the Court will grant the Defendants' Motions regarding all § 1983 claims against the Defendants in their official capacities.

### 3.    Whether Defendants Are Entitled to Summary Judgment on Marksmeier's Tort Claims.

The Defendants further argue that Marksmeier's state-law tort claims must fail, and that Defendants are entitled to summary judgment on each of these claims.  Specifically, the Defendants contend that: (1) Marksmeier's false-arrest, false-imprisonment, defamation, libel, and slander claims fail because they are barred by sovereign immunity, and (2) Marksmeier failed to state a claim for intentional infliction of emotional distress. The Court agrees, and will grant judgment as a matter of law in favor of the Defendants with respect to Marksmeier's tort claims.

"When an action is brought against an individual employee of a [governmental] agency, a court must determine whether the action against the individual official is in reality an action against the [entity] and therefore barred by sovereign immunity."  *McKenna v. Julian*, 277 Neb. 522, 526, 763 N.W.2d 384, 389 (Neb. 2009).  In the state of Nebraska, tort claims against political subdivisions proceed exclusively according to Nebraska's Political Subdivision Tort Claims Act ("PSTCA" or the "Act"), Neb. Rev. Stat. § 13-901, *et*

18

*seq* (2007). *Id.* The Act is a limited waiver of sovereign immunity. In sum, it both establishes the procedure with which to bring a suit against a political subdivision and provides explicitly a list of claims for which sovereign immunity is not waived and suit cannot be brought. *Id.*

Among the claims to which the PSTCA does not apply and the state and its political subdivisions have not waived sovereign immunity are: any claims arising out of "false arrest, false imprisonment, . . . libel, [and] slander." Neb. Rev. Stat. §13-910(7). Although Marksmeier argues that these exemptions are immaterial because the PSTCA requires the political subdivision's employee to be acting within the scope of his employment, § 13-903(4), and the Defendants were operating outside the scope of their employment, this argument is without merit.

Marksmeier seeks to demonstrate that Officer Davie acted outside of his jurisdiction when he arrested Marksmeier, and therefore the arrest was outside the scope of his employment. (Pl.'s Br. 2, p. 4-5.) As discussed above, however, Marksmeier makes no allegations to rebut Officer Davie's statement that he was employed by both the City of Wisner and the Village of Beemer, making the arrest of Marksmeier in Beemer, Nebraska, within the scope of Davie's employment. Deputy Delmont was clearly acting within the scope of his employment when, as a Deputy Sheriff for Cuming County, he interviewed a criminal suspect in Cuming County. Similarly, Chief Schultz, was acting within the scope of his employment when he facilitated the interview of a criminal suspect at the Beemer Police Station. Therefore, the Defendants in the present case were acting within the scope of their employment and the above stated exemptions to the PSTCA's limited waiver of sovereign immunity apply, particularly when considering that the Court must "construe the

19

PSTCA in favor of the political subdivision and against the waiver of sovereign immunity." *McKenna*, 763 N.W.2d at 390.  Consequently, the Defendants are entitled to summary judgment regarding Marksmeier's claims of false arrest, false imprisonment, libel, and slander.

Deputy Delmont argues that Marksmeier's defamation claim "arises out of" his libel and slander claims, and therefore, pursuant to the above analysis, he suggests that the claim is also excluded from the PSTCA's limited waiver of sovereign immunity.  (Def.'s Br. in Support of Summ. J., p. 15.)  The Court agrees.  If a defendant is immune from suits alleging libel or slander, the defendant is also immune from suit for defamation, and, therefore, the Defendants will be granted summary judgment regarding any purportedly separate claim by Marksmeier for defamation.

Regarding Marksmeier's claim for intentional infliction of emotional distress, the Defendants suggest that there is no genuine issue of material fact regarding whether such a claim exists.  A suit alleging intentional infliction of emotional distress requires that the plaintiff demonstrate:

> (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

*Brandon v. County of Richardson*, 261 Neb. 636, 656, 624 N.W.2d 604, 620-21 (Neb. 2001) (involving an aggressive and degrading police interview of a recent rape victim). Viewing the facts in the light most favorable to Marksmeier, the Court finds that his allegations of intentional infliction of emotional distress fail to meet this test.  Here, the

Defendants were involved in questioning a criminal suspect, not a rape victim, and although some childish terminology was used, the questioning did not amount to intentional infliction of emotional distress under Nebraska law.   Consequently, the Court finds there is no genuine issue as to whether the Defendants committed the tort of intentional infliction of emotional distress, and, accordingly, they will be granted summary judgment on that claim.

## CONCLUSION

For the aforementioned reasons, the Court finds that the Defendants' Motions for Summary Judgment should be granted, and that the Defendants are entitled to judgment as a matter of law on all claims.

IT IS ORDERED:

1.     Defendant Mark Delmont's Motion for Summary Judgment (Filing No. 11) is granted;

2.     Defendant Randy D. Davie's Motion for Summary Judgment (Filing No. 20) is granted;

3.     Defendant Lonnie Schultz's Motion for Summary Judgment (Filing No. 30) is granted; and

4.     The Court will file a separate Judgment in accordance with this Memorandum and Order.

DATED this 30th day of July, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

21